The oxnnion of tlio Court was delivered by
Bermudez, (!. J.
The City claims in those suits a license tax of $50 from each of tho defendants, who pursue tho occupation of coopers.
Tho defense is, tho unconstitutionality of the tax, by reason of an exemption from such tax, under tlio x>rovisions of 'Article 207 of the Constitution.
The lower court gave judgment for tho City against each defendant, for ten dollars only, considering them as exempt from the $50 license, but as liable for that of S10 as mechanics, whoso receipts exceed $2,000.
The judgments thus rendered are brought up to be reviewed together.
The Article invoked reads:
“ There shall also be exemx>t from taxation and license for a period *597 of ten years from the adoption of this Constitution, the capital, machinery, and other property employed in the manufacture of textile fabrics, leather, shoes, harness, saddlery, hats, flour, machinery, agricultural implements, and furniture and other articles of wood, marble or stone; soap, stationery, ink and paper, boat building and chocolate; provided that not less than five hands are employed in each factory.”
The. object of the convention was to exempt from taxation the property mentioned, and from license the persons using the same, during the time, and under the restriction stated.
To determine whether the defendants are such persons, it is necessary to determine whether they are engaged in the manufacture of articles of wood.
The record shows that they are coopers, mechanics who employ assistance; that they make barrels, hogsheads from rough logs and splits, and carry on a general cooperage business.
It establishes that for 1831, LsBlanc’s gross receipts from the sale of such articles amounted to $30,000; from the sale of hoop poles to $2,000; from repairing damaged packages to $3,000.
It shows that for the same year those of Beck, for the sale of articles manufactured by him, amounted to $30,000; for the sale of hoop poles to $3,000; for the repairing of damaged articles to $400, and for the sale of old barrels, etc., taken in payment of new ones, to $2,000.
Webster defines a manufacturer to he a person engaged in the business of working raw materials into wares suitable for use.
The defendants are either dealers or they are manufacturers. If they are not dealers, they are manufacturers. They may he both. A dealer is not one who buys to 'keep, or makes to sell, hut one who buys to sell again. Ho stands between the producer and the consumer, and depends for his profit, not upon the labor which he bestows on his commodities, but upon the skill and foresight with which ho watches the markets.
A manufacturer is not one who creates out of nothing, for that surpasses human power; neither is ho one who produces a new article out of materials entirely raw. He is one who gives new shapes, new qualities, new combinations to matter which has already gone through .some artificial process. A shoemaker is none the loss a manufacturer, because lie does not also tan the leather; the tanner is none the less a manufacturer of leather, because he does not breed and raise the bullocks from which the raw hides are taken. The tanner makes leather to sell, hut does not buy hides to sell again. He produces the article of the leather and depends for Ms profit upon the labor which he bestows upon the raw material.
In other words, dealers are middlemen between the manufacturer or the producer and the consumer. Manufacturers are the suppliers of *598 the dealers, or consumers. 33 Penn. 330; Commonwealth vs. Campbell, 100 Mass. 183; Burroughs on Tax. p. 153, § 80.
In so far as they make barrels, hogsheads, and similar articles of wood, such as coopers make, the defendants must be considered as manufacturers, and as such, exempt from the license sought to be collected from them.
But the case is different where they deal in articles of wood not manufactured by themselves; as when they buy and sell hoop, poles. For pursuing such business they are liable. The exemption, to which they are entitled as coopers, cannot be extended to occupations which are not formally exempt. 28 A. 765; 31 A. 310, 668.
There is an admission in the record that it is the custom of the coopers doing business on an extensive scale, to purchase in the spring cargoes of hoop poles, and after retaining as many as maybe necessary for their factories, to resell to smaller dealers the surplus remaining on hand.
That the sales of defendant, LeBlanc, exceed $2,000, and those of defendant, Beck, exceed $3,000.
The City has claimed $50 from each defendant, whom the lower court has condemned to pay a license of $10 only. The City insists that if they be not liable as coopers, they should be held liable as mechanics, each for a license of $20, their receipts exceeding $4,000. The appeal being on the law and on the facts, under Article 81 of the Constitution, we can pass upon this question.
From the showing made, we are not satisfied that in the business done by them the defendants have shown that the hoop poles which they have sold were those remaining on hand at the end of the season. The burden was upon them to do so, on this account and under the admission. The inference is that they have sold those hoop poles as dealers, to smaller dealers, but as their receipts did not exceed $4,000, but $2,000 only, they could not be held to pay a license of more than $10.
We find no error in the judgments appealed from, which are, therefore, affirmed with costs.
Rehearing refused.